UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DOCKET NO. 5:19-CR-022-MOC |
| | ) | |
| v. | ) | |
| | ) | **GOVERNMENT'S MOTION *IN*** |
| (1) GREG E. LINDBERG, and | ) | ***LIMINE* TO EXCLUDE EXTRINSIC** |
| (2) JOHN D. GRAY | ) | **EVIDENCE** |

The United States of America, by and through the undersigned attorneys, submits this motion *in limine* to limit the defendants' cross examination of government's witness Insurance Commissioner Mike Causey and to exclude the introduction of extrinsic evidence, including documents and witnesses, offered to attack Commissioner Causey's credibility. In the prior trial of this matter, the defendants sought to introduce documents and witnesses relating to allegations (1) that Commissioner Causey improperly sold unauthorized products, including blueberries, at a Farmer's Market, (2) allegations concerning Commissioner Causey's actions and related litigation with regard to an unrelated company, Cannon Surety, LLC ("Cannon"), and (3) allegations that information provided by Commissioner Causey in completing his North Carolina State Ethics Commission Statement of Economic Interest, was inaccurate.

With respect to each, the Court limited cross-examination and prohibited the defendants from introducing extrinsic evidence, to include documents or additional witnesses. *See generally,* Tr. 608:14-16 ("[T]here will be no extrinsic evidence put in the case on any credibility issue and so understand that—so everybody understands where we are on that"). The United States would respectfully request that this Court rule *in limine* consistent with its prior rulings.

## FACTUAL BACKGROUND

A grand jury in the Western District of North Carolina returned a Bill of Indictment against four defendants—Greg E. Lindberg, John D. Gray, John V. Palermo, and Robert Cannon Hayes—charging one count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349, and one count of bribery concerning programs receiving federal funds and aiding and abetting, in violation of 18 U.S.C. §§ 666(a)(2) and 2, in connection with a scheme to bribe the elected North Carolina Insurance Commissioner. Bill of Indictment (Docket 3). As detailed in the Bill of Indictment, the government intends to prove that the defendants engaged in a scheme to corruptly offer the Commissioner things of value—specifically, political contributions—in exchange for specific official action, including the removal and replacement of the senior deputy commissioner responsible for overseeing the regulation of Lindberg's insurance companies.

The Bill of Indictment provides extensive details about how the scheme unfolded, including a series of meetings in which the defendants pressed the Commissioner for the removal and replacement of the senior deputy commissioner by the Commissioner in exchange for $2 million in campaign contributions to be provided via various means including independent expenditure committees and initiating the transfer of campaign contributions through a state political party.

During the course of the investigation, which spanned from January through August 2018, Commissioner Causey, working in conjunction with federal law enforcement, recorded over 100 conversations (over 50 hours) with the defendants. Tr. 624: 5-11. The series of meetings culminated in a final meeting on July 25, 2018. Bill of Indictment ¶¶ 68-74. During that meeting, Lindberg again set forth the agreement and action items to be accomplished by Gray and the Commissioner: "Ok, so resolved. You'll [Gray] get on the horn with Robin [Hayes] right away.

2

Get that check over to [the Commissioner] now.  And then by the end of August we'll get [the Commissioner] the balance, and we'll get [the selected employee from another division of the Department of Insurance]." *Id*. ¶ 72.  The very next day, at the instruction of Lindberg and Gray, the state political party transferred a $230,000 installment of the bribe payment—funneling funds donated by Lindberg—to the Commissioner's campaign account. *Id*. ¶ 74.

## STANDARD OF REVIEW

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004).  The Confrontation Clause does not "prevent[ ] a trial court from imposing any limits on the scope of defense counsel's cross-examination and presentation of evidence related to the impeachment of a key prosecution witness's credibility." *Quinn v. Haynes*, 234 F.3d 837, 847 (4th Cir. 2000), *cert. denied*, 532 U.S. 1024 (2001).  Accordingly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975).  A district court's ruling applying the Federal Rules of Evidence is reviewed for abuse of discretion, and will be upheld so long as it is not "arbitrary or irrational." *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir. 2002).

## ARGUMENT

### I.     Legal Standard

Evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Of course, "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402. Even if

relevant, "[t]he court may exclude [the] evidence if its probative value is substantially outweighed by a danger of one or more of…confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403. In that vein, the "[t]he court should exercise reasonable control over the mode…of examining witnesses and presenting evidence so as to…avoid wasting time; and…protect witnesses from harassment or undue embarrassment. Fed. R. Evid. 611(a). Moreover, while cross-examination, of course, can get into "matters affecting a witness's credibility," Fed. R. Evid. 611(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 609(b).

"A cross-examiner may inquire into specific incidents of conduct but does so at the peril of not being able to rebut the witness' denials . . . thus, if the witness stands his ground and denies the alleged misconduct, the examiner must 'take his answer,' not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting act." *United States v. Ling,* 581 F.2d 1118 (4th Cir. 1978) (internal citations omitted). Permissible cross-examination under Rule 608(b) is measured against the backdrop of Fed. R. Evid. 403, which requires that the probative value of the specific instances of conduct not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. The purpose of this rule is to prohibit things from getting too far afield-to prevent the proverbial trial within a trial." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993).

The limits on cross-examination are reinforced by Rules 404(b) and 403. The defendant may use Federal Rule of Evidence 404(b) to introduce evidence only if it is "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." *United States v. Rubio*, 87 F.3d 1309 (4th Cir. 1996) (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)). To do so,

the defendant must demonstrate that the evidence sufficiently relates to the charged offense by "tend[ing], alone or with other evidence, to negate [the defendant's] guilt of the crime charged against him." *Id*. (quoting *United States v. Stevens*, 935 F.2d 1380, 1404 (3d Cir. 1991)).

The test as to whether a matter is collateral is whether "the party seeking to introduce it for purposes of contradiction would be otherwise entitled to prove it as part of his case. In short, could the fact be shown in evidence for any purpose independent of the contradiction." *United States v. Lambert*, 463 F.2d 552, 557 (7th Cir. 1972) (citations and quotations omitted). If the matter is collateral, the cross-examiner must take the answer provided by the witness. *Ling,* 581 F.2d at 1122-1123.

Evidence relating to Causey's dealings with a Farmer's Market, civil litigation relating to the Cannon Surety company, or the completion of his state ethics forms have no bearing on whether the defendants engaged in a scheme to bribe the NC Commissioner of Insurance. Accordingly, beyond any potential relevance as impeachment for Commissioner Causey, any such evidence in the form of documents or testimony would be inadmissible. Finally, even if the court found that some of these matters were relevant, "[t]he court may exclude [the] evidence if its probative value is substantially outweighed by a danger of one or more of…confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403.

II.     **The Court Should Exclude as Irrelevant Evidence and Argument Related to Allegations about Commissioner Causey's Unauthorized Sale of Products at a Farmer's Market in 2009.**

In the prior trial, defendants sought to attack Commissioner Causey's credibility by introducing evidence and calling witnesses to testify that, in 2009, then-farmer Causey sold unauthorized products at a Farmer's Market, resulting in him receiving a temporary suspension from the farmer's market. Among the reported violations was one to suspend local farmer Causey for selling unauthorized blueberries from under the table, which was subsequently overturned by

the city of Greensboro's interim Parks and Recreation Director after the Director determined he could find no evidence that money changed hands. Press reports alluded to potential political pressure related to the Director of Parks and Recreation's decision to reverse farmer Causey's violation and suspension, but all parties denied any such political pressure.

Testimony regarding 15-year-old allegations of improper blueberry sales has no relevance to the charges here, *i.e.*, that Defendants engaged in honest services wire fraud and federal bribery. Even, if the defendants were able to articulate how farmer Causey allegedly selling unauthorized blueberries under the table at a Farmer's Market has some marginal relevance, such evidence should be excluded as the risk of confusion, misleading the jury, wasting time, and/or undue delay substantially outweighs any purported probative value of the evidence.

Moreover, while the cross-examination of Commissioner Causey can, of course, get into "matters affecting [his] credibility," Fed. R. Evid. 611(b), it is hard to see how these allegations of under the table blueberry sales at a Farmer's Market 15 years ago have any bearing on credibility. To the contrary, any such questioning would only waste time and/or attempt to unduly embarrass Commissioner Causey. The Court should, therefore, preclude cross-examination on this issue. Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode…of examining witnesses and presenting evidence so as to…avoid wasting time; and…protect witnesses from harassment or undue embarrassment.)

Lastly, even if the defendants are able to show that these purported violations of the Farmer's Market rules were properly the subject of the cross-examination of Commissioner Causey, they should nevertheless be precluded from introducing documents or calling witnesses to testify about that conduct in order to attack Commissioner Causey's character for truthfulness.

III.    **The Court Should Exclude as Irrelevant Evidence Related to Allegations about Commissioner Causey's Actions with Regard to Cannon.**

In the previous trial, defendants sought to introduce evidence regarding actions Commissioner Causey took on behalf of the Department of Insurance with regard to an unrelated company, Cannon. In particular, in or about September 2017, Commissioner Causey filed a Petition for an Order of Rehabilitation, a Seizure Order, an Order Appointing Receiver, and Injunctive Relief ("Petition") against Cannon. The defendants sought to introduce evidence to show that Commissioner Causey filed that Petition without legitimate basis and out of political animus. Such evidence should be precluded pursuant to Rules 401, 402 and 403, as the actions that Commissioner Causey took on behalf of the Department of Insurance with regard to an unrelated bail bonds company have no relevance to whether the Defendants in this case engaged in honest services wire fraud and federal bribery.

Defendants were allowed to question Commissioner Causey about statements made in a civil deposition relating to the Cannon litigation to the extent that defendants claimed statements contained in the prior sworn testimony contradicted his statements made elsewhere or were otherwise relevant to actions that Causey took in this case. This cross examination was, however, extremely limited by the Court and the nature of the litigation giving rise to the deposition was never presented to the jury.

Evidence regarding actions Commissioner Causey took on behalf of the Department of Insurance with regard to Cannon have no relevance to the guilt or innocence of Defendants in this case. Defendants' argument in the prior trial that Causey's alleged animus towards Cannon equated to bias against Lindberg is equally unavailing. Although the Fourth Circuit has held that "Rule 608(b) does not apply when evidence is offered for the purpose of establishing or rebutting a witness's bias[,]" *United States v. Sanders*, 189 Fed. Appx. 207, 210 (4th Cir, 2006) (*quoting United States v. Sumlin*, 271 F.3d 274, 282–83 (D.C.Cir.2001), attacking a witness's credibility

based on bias or motive is still subject to limitations. *See United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003) (upholding district court's decision to exclude extrinsic evidence relating to bias and motive where "there is no concrete evidence as to what happened" in the prior incident and resolving that question would "necessitate[] an exhaustive case within a case that would have confused the jury as to the issues to be decided.").

This Court correctly noted in the prior trial that establishing bias towards Cannon would not equate to bias towards Lindberg and exploring these issues would lead to unwarranted delay and confusion for the jury. Tr. 197: 22-24 ("[I]nquiring into the commissioner's other investigations would lead to delay, confusion, and a potential trial within a trial"). Since any issues related to bias or retribution with respect to Cannon would be sharply contested by the parties, the jury would be faced with the type of mini trial within the trial that the Rules seek to prevent. Accordingly, this Court should again preclude defendants from introducing evidence or calling witnesses related to the Cannon litigation.

IV. **The Court Should prohibit the admission of extrinsic evidence relating to Mr. Causey's completion of the North Carolina State Ethics Commission Statement of Economic Interest Forms.**

During the previous trial, counsel for the defendants attempted to cross examine Causey on assertions contained in his North Carolina State Ethics Commission Statement of Economic Interest form ("SEI"). This form, filed by State employees who are subject to the North Carolina Government Ethics Act, is filed annually. https://ethics.nc.gov/seis (last visited April 15, 2024). Commissioner Causey completed these required forms, publicly filed with the state of North Carolina, annually. Counsel suggested during the prior trial that they were in possession of additional records which would tend to show that Commissioner Causey had not been truthful in completing the forms. Specifically, it was alleged that he failed to accurately identify debt that he

8

had incurred in excess of $10,000 as required by the form.  The Court declined to allow counsel to present extrinsic evidence relating to Causey's assessment of his personal debt.  Tr. 648:12-15 ("He can ask him if he put anything in there about changes in his debts or whatever he wants to do in terms of asking.  But he has to take the answer.")  As this Court correctly noted, these collateral inquiries are expressly prohibited by Rule 608(b) and the defense should not be permitted to contradict the testimony of the witness with the testimony of another or the introduction of documentary evidence.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court preclude extrinsic evidence in an attempt to impeach Commissioner Causey's credibility including but not limited to (1) allegations related to whether, in 2009, Commissioner Causey improperly sold unauthorized products, including blueberries, at a Farmer's Market; (2) allegations concerning Commissioner Causey's actions with regard to an unrelated company, Cannon; and (3) allegations relating to Mr. Causey's completion of his annual SEIs.  Prohibiting the introduction of such evidence would be consistent with Rule 608(b)'s ban on extrinsic evidence and the limitations found in Rules 401 and 403 which serve to avoid minitrials on issues that would tend to distract and confuse the jury.

RESPECTFULLY SUBMITTED, this 15th day of April, 2024.


COREY R. AMUNDSON                          DENA J. KING
Chief, Public Integrity Section            UNITED STATES ATTORNEY
Criminal Division


*/s/ William J. Gullotta*                   s/ Lawrence J. Cameron
William J. Gullotta                        Lawrence Cameron
Trial Attorney                             Assistant United States Attorney
Connecticut Bar # 423420                   North Carolina Bar # 41922
Public Integrity Section                   227 West Trade Street, Suite 1650

U.S. Dept. of Justice, Criminal Division
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-0014
Email: William.Gullotta2@usdoj.gov

Charlotte, North Carolina 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)
Email: Lawrence.Cameron@usdoj.gov

***s/ Dana O. Washington***
Dana Washington
Assistant United States Attorney
Virginia Bar # 31981
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)
Email: Dana.Washington@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of April 2024, the foregoing document was served electronically through ECF filing upon counsel of record for the defendants.

DENA J. KING
UNITED STATES ATTORNEY

*s/ Dana O. Washington*
DANA O. WASHINGTON
ASSISTANT UNITED STATES ATTORNEY